**THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

**KAYVON NIKBAKHSHIAN**
119 Kingsley Road SE
Vienna, Virginia 22180

Plaintiff,

v.

**HOP FLYT, INC.**
12003 Double Tree Lane
Lusby, Maryland 20657

Serve: Resident Agent
Lucille Winston
12003 Double Tree Lane
Lusby, Maryland 20657

AND

**ROBERT WINSTON**
12003 Double Tree Lane
Lusby, Maryland 20657

AND

**LUCILLE WINSTON**
12003 Double Tree Lane
Lusby, Maryland 20657

AND

**KAREEM KIRDASSI**
1521 Boyd Pointe Way Apt. 1514
Vienna, Virginia 22181

Defendants.

Case No. ___________________________

# COMPLAINT

Plaintiff Kayvon Nikbakhshian ("Mr. Nikbakhshian"), for his Complaint against Defendants Hop Flyt, Inc. (the "Company"), Robert Winston ("Mr. Winston"), Lucille Winston ("Mrs. Winston"), and Kareem Kirdassi ("Mr. Kirdassi") states as follows:

## PARTIES AND JURISDICTION

1. Mr. Nikbakhshian is an individual currently domiciled at the address of 119 Kingsley Road SE, Vienna, Virginia 22180.

2. The Company is a stock corporation incorporated under the laws of the State of Maryland with its principal place of business at the address of 12003 Double Tree Lane, Lusby, Maryland 20657, in Calvert County, Maryland.

3. Mr. Winston is an individual domiciled at the address of 12003 Double Tree Lane, Lusby, Maryland 20657, in Calvert County, Maryland. He has referred to himself in Company documents as the Company's Founder, President, and Chief Executive Officer (CEO). He is an owner and director of the Company and has signed legal documents on behalf of the Company as its President. Upon information and belief, he is married to Mrs. Winston.

4. Mrs. Winston is an individual domiciled at the address of 12003 Double Tree Lane, Lusby, Maryland 20657, in Calvert County, Maryland. She has referred to herself in Company documents as the Company's Founder, President, and Chief Operations Officer (COO). She is an owner and director of the Company and has signed legal documents on behalf of the Company as its Secretary and its President. Upon information and belief, she is married to Mr. Winston.

5. Mr. Kirdassi is an individual domiciled at the address of 1521 Boyd Pointe Way Apt. 1514, Vienna, Virginia 22181. Upon information and belief, he is or was the Vice President of Business Development of the Company.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the federal Securities Act of 1933, 15 U.S.C. §§ 77a et seq. and the federal Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

7. This Court has personal jurisdiction over each Defendant pursuant to Section 22(a) of the Securities Act of 1933 (15 U.S.C. § 77v(a)), Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), the Maryland long-arm statute, at Md. Code, Cts. & Jud. Proc. § 6-103(b), and the Due Process Clause of the U.S. Constitution. The Company has its principal place of business and transacts business, in Calvert County, Maryland. The offer to sell the securities originated from, and the investment funds were received by, the Company in Calvert County, Maryland. Each Defendant actively participated and/or had the power to control the Company with respect to the offer and/or sale.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), and the authorities and facts cited in the preceding paragraph, which are incorporated by reference herein.

9. In addition, the Company consented to personal jurisdiction and venue in this Court in Section 7(d) of the Stock Purchase Agreement it signed, which provides as follows:

> . . . The parties [] hereby irrevocably and unconditionally submit . . . to the jurisdiction of the United States District Court for Southern Maryland for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement[] . . . [and] hereby waive, and agree not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court. . . .

**FACTS**

10. Mr. Nikbakhshian lacks sufficient knowledge and experience in financial and business matters to make him capable of evaluating the merits and risks of prospective investments. He is not an accredited investor. His net worth has at all times been less than $1 Million. His annual income has at all times been less than $200,000. He has never been married.

11. Prior to April 2025, Mr. Nikbakhshian had never heard of the Company, Mr. Winston, or Mrs. Winston.

12. During the first week of April 2025, Mr. Nikbakhshian first learned about the Company while on vacation, after crossing paths with Mr. Kirdassi, a friend with whom he had not spoken in about a year.

13. During the first week of April 2025, Mr. Kirdassi told Mr. Nikbakhshian that Mr. Kirdassi was the Vice President of Business Development of the Company; that Mr. Kirdassi's father, David Kirdassi, had invested $1 Million in the Company, and; that he (Kareem Kirdassi) and the Company were working with the Saudi Defense Ministry/Fund to obtain a $20 Million investment in the Company and various contracts.

14. Mr. Kirdassi scheduled a conference call via WhatsApp among Mr. Nikbakhshian, Mr. Winston and Mr. Kirdassi for April 7, 2025. During that WhatsApp call, which started at 3:00 PM on April 7, 2025, and lasted approximately 30 minutes:

a. Mr. Winston and Mr. Kirdassi offered to sell the Company's securities to Mr. Nikbakhshian.

b. Mr. Nikbakhshian expressed to Mr. Winson and Mr. Kirdassi that he was not an experienced or accredited investor. Mr. Nikbakhshian disclosed that his entire net worth consisted of $500,000 in Bitcoin. Mr. Nikbakhshian specifically stated: "I am not familiar with

this industry" and "I am not an investor" and "I may not be the right fit for this deal." Mr. Nikbakhshian expressed many doubts and uncertainties about investing in the Company.

c. Nevertheless, Mr. Kirdassi and Mr. Winston pushed, pressured, and persuaded Mr. Nikbakhshian to buy the Company's securities.

d. Mr. Nikbakhshian initially suggested that he may make an investment in the range of $25,000 to $50,000.

e. In response, Mr. Kirdassi and Mr. Winson encouraged and urged Mr. Nikbakhshian to significantly increase the amount of Mr. Nikbakhshian's investment.

f. Mr. Kirdassi misrepresented again that his father, David Kirdassi, had already invested $1 Million in the Company.

g. Mr. Winston said nothing to correct or modify Mr. Kirdassi's misrepresentation that David Kirdassi had already invested $1 Million in the Company. Mr. Winston did not tell Mr. Nikbakhshian that in reality David Kirdassi had <u>not</u> invested $1 Million in the Company.

h. Mr. Kirdassi suggested that Mr. Nikbakhshian invest half of the $1 Million that Mr. Kirdassi claimed his father (David Kirdassi) had invested.

i. Neither Mr. Kirdassi nor Mr. Winston asked Mr. Nikbakhshian any questions about Mr. Nikbakhshian's income, assets, or net worth.

15. On April 7, 2025, at 3:38 PM, right after the WhatsApp call, Mr. Winston sent Mr. Nikbakhshian a text message stating as follows:

> Hi, this is Rob Winston of Hopflyt. Thank you for investing into our company!
>
> Our company Coinbase application is in review. I don't know how long that will take, but I will send you a request for the $500k when it is complete. I will then email you a stock purchase agreement reflecting your discount for the large investment. You will also get a stock ledger of your investment.

> Let's have a teams meeting in the near future and work on a time to meet face-to-face. Thanks!

(Emphasis added.)

16. On April 7, 2025, at 7:40 PM, Mr. Nikbakhshian transferred the equivalent of $497,282.92 in Bitcoin to the Company's newly created Coinbase wallet.

17. At no time prior to accepting the $497,282.92 worth of Bitcoin from Mr. Nikbakhshian did Defendants provide Mr. Nikbakhshian with any documentation or financial disclosures. Mr. Nikbakhshian received no offering terms, share price information, valuations, financial statements, capitalization tables, risk disclosures, investor questionnaires, or subscription materials.

18. On April 7, 2025, at 8:04 PM, Mr. Winston sent Mr. Nikbakhshian a screenshot by text message confirming the Company's receipt of $497,282.92 worth of Bitcoin from Mr. Nikbakhshian, along with the following text message:

> I will make the stock purchase agreement out for this amount. If it goes up by the time we exchange it for cash, I will send you some more shares.

19. On April 7, 2025, at 8:58 PM—only after Mr. Nikbakhshian had already transferred the investment funds to the Company, and after the Company had already accepted those funds—did Mr. Winston email a Stock Purchase Agreement to Mr. Nikbakhshian for signature.

20. Among other things, the Stock Purchase Agreement provides: "Subject to the terms and conditions of this Agreement, [Mr. Nikbakhshian] agrees to purchase at the applicable Closing (as defined below) and the Company agrees to sell and issue 293,903 shares at $1.692 per share for $497,282.92." Contrary to the statements that Mr. Nikbakhshian had just made to Messrs. Winston and Kirdassi during the WhatsApp call, the Stock Purchase Agreement that the Company prepared and sent to Mr. Nikbakhshian provides: "The Purchaser is an accredited investor as

defined in Rule 501(a) of Regulation D promulgated under the Securities Act." Mr. Winston signed the Stock Purchase Agreement as the President of the Company.

21. Mr. Nikbakhshian, who had just spoken with Mr. Winston and Mr. Kirdassi and who had already transferred the investment funds to the Company, returned a signed Stock Purchase Agreement to Mr. Winston that same day, on April 7, 2025, at 10:44 PM.

22. Mrs. Winston signed a letter dated April 7, 2025, as the Company's President and Secretary certifying to Mr. Nikbakhshian that "the company's Board of Directors has officially approved the sale agreement and related transactions." Mr. and Mrs. Winston are the Company's directors.

23. Mrs. Winston signed Form D dated April 15, 2025, as the Company's President, claiming an exemption in connection with the Company's sale of securities to Mr. Nikbakhshian under SEC Rule 506(b).

24. Apart from his investment in the Company, Mr. Nikbakhshian had never previously invested in a private company, participated in a securities offering, or qualified as an accredited investor.

25. At no time have Defendants asked for or obtained any documentation or certification of Mr. Nikbakhshian's income, assets, or net worth. They never asked for or obtained Mr. Nikbakhshian's income tax forms or tax returns, bank statements, brokerage statements, statements of securities holdings, certificates of deposit, tax assessments, or credit reports before offering securities to Mr. Nikbakhshian and/or accepting Mr. Nikbakhshian's investment funds. Nor have Defendants asked for or obtained any certification of Mr. Nikbakhshian's net worth or income from Mr. Nikbakhshian's licensed attorneys, certified public accountants, or investment advisers.

26. Since transferring the funds to the Company, Mr. Nikbakhshian has asked the Company to unwind the transaction.

27. The Company has declined Mr. Nikbakhshian's requests.

28. On January 20, 2026, Mr. Nikbakhshian demanded through counsel that the Company rescind his investment and immediately return to him the $497,282.92 that he had invested in the Company, advising the Company that it had effectuated the investment in violation of federal and state securities laws.

29. The Company refused the demand.

30. The Company's public-facing website generally solicits to investors and advertises as follows:

> Investor Opportunity
> We're currently raising capital to complete hybrid-electric prototype development, initiate flight demonstrations, launch low-rate production, and complete first deliveries.
> Whether you're an early-stage investor, strategic defense partner, or fund looking at dual-use technology, we invite you to connect.
> Contact@Hopflyt.com

**COUNT 1**
**Sale of Unregistered Securities in Violation of the U.S. Securities Act of 1933**
**(15 U.S.C. §§ 77a *et seq.*), including §§ 12(a)(1) & 15**
**Against All Defendants**

31. Mr. Nikbakhshian hereby re-alleges and incorporates by reference the allegations set forth in the above and below paragraphs as though fully set forth herein below.

32. Defendants used means of interstate commerce, including telecommunication networks, email servers, the internet, and Bitcoin exchanges, in connection with offering to sell and selling securities to Mr. Nikbakhshian.

33. Defendants offered to sell and did in fact sell securities to Mr. Nikbakhshian, despite that the Company had no registration statement in effect for those securities. Mr. Winston

and Mr. Kirdassi each directly solicited Mr. Nikbakhshian, offered the securities to Mr. Nikbakhshian, and played a substantial role in persuading him to purchase the Company's securities. Mr. Winston and Mrs. Winston each participated in the transaction process, including by signed paperwork on behalf of the Company in connection with the sale of the securities to Mr. Nikbakhshian. The Company issued the securities and acted through the individual Defendants. Each Defendant was motivated by financial gain.

34. Defendants cannot meet their burden of demonstrating that they are entitled to an exemption from Section 5 of Securities Act (15 U.S.C. § 77e). An exemption is strictly construed against those claiming it.

35. Defendants are not entitled to rely on the statement in the Stock Purchase Agreement that they had prepared which states that "The Purchaser is an accredited investor as defined in Rule 501(a) of Regulation D promulgated under the Securities Act." Mr. Nikbakhshian advised Mr. Winston and Mr. Kirdassi that he was not an accredited or experienced investor during the WhatsApp call on April 7, 2025, before he purchased the securities. Moreover, the Stock Purchase Agreement was sent to Mr. Nikbakhshian only after the Company offered to sell the securities to Mr. Nikbakhshian, and only after the Company accepted the investment funds from Mr. Nikbakhshian.

36. Mr. and Mrs. Winston, who are both owners, directors, and officers of the Company, and who are married to each other, are each personally liable, jointly and severally, with and to the same extent as the Company to Mr. Nikbakhshian, pursuant to Section 15 of the Securities Act of 1933 (15 U.S.C. § 77o(a)). They each had the power to control, and did control, offers to sell, and sales of, the Company's securities.

37. Mr. Nikbakhshian will tender the securities before entry of Judgment to recover the $497,282.92 that he paid for the securities, with interest thereon, pursuant to Section 12 of the Securities Act of 1933 (15 U.S.C. §77l).

WHEREFORE, Plaintiff Kavon Nikbakhshian respectfully prays for a money Judgment against Defendants Hop Flyt, Inc., Robert Winston, Lucille Winston, and Kareem Kirdassi, jointly and severally, in the amount of $497,282.92, with interest thereon, pursuant to Section 12 of the Securities Act of 1933, plus the amount of his reasonable attorneys' fees and costs pursuant to Section 7(i) of the Stock Purchase Agreement.

**COUNT 2**
**Sale of Unregistered Securities in Violation of the Maryland Securities Act**
**Md. Code, Corps & Assocs, §§ 11-101, *et. seq.*, including §§ 11-703(a)(1)(i) & 11-501**
**Against All Defendants**

38. Mr. Nikbakhshian hereby re-alleges and incorporates by reference the allegations set forth in the above and below paragraphs as though fully set forth herein below.

39. The offer to sell federal covered securities originated from, and the investment funds were received by, the Company in Maryland. Each Defendant actively participated and/or had the power to control the Company with respect to the offer and/or sale.

40. The Company had no registration statement in effect for the securities. Mr. Winston and Mr. Kirdassi each directly solicited Mr. Nikbakhshian, offered the securities to Mr. Nikbakhshian, and played a substantial role in persuading him to purchase the Company's securities. Mr. Winston and Mrs. Winston each participated in the transaction process, including by signed paperwork on behalf of the Company in connection with the sale of the securities to Mr. Nikbakhshian. The Company issued the securities and acted through the individual Defendants. Each Defendant was motivated by financial gain.

41. Defendants cannot meet their burden of demonstrating that the securities or transaction is exempted under Subtitle 6 of the Maryland Securities Act or Section 5 of Securities Act (15 U.S.C. § 77e).

42. Defendants are not entitled to rely on the statement in the Stock Purchase Agreement that they had prepared which states that "The Purchaser is an accredited investor as defined in Rule 501(a) of Regulation D promulgated under the Securities Act." Mr. Nikbakhshian advised Mr. Winston and Mr. Kirdassi that he was not an accredited or experienced investor during the WhatsApp call on April 7, 2025, before he purchased the securities. Moreover, the Stock Purchase Agreement was sent to Mr. Nikbakhshian only after the Company offered to sell the securities to Mr. Nikbakhshian, and only after the Company accepted the investment funds from Mr. Nikbakhshian.

43. Mr. and Mrs. Winston, who are both owners, directors, and officers of the Company, and who are married to each other, are each personally liable jointly and severally with and to the same extent as the Company to Mr. Nikbakhshian, pursuant to the Maryland Securities Act § 11-703(c). They each control the Company and the Company acted through each of them to consummate the sale of securities to Mr. Nikbakhshian. Mr. Winston offered and sold the securities to Mr. Nikbakhshian and both he and Mrs. Winston signed paperwork on behalf of the Company in connection with the sale of the securities to Mr. Nikbakhshian.

44. Mr. Nikbakhshian will tender the securities before entry of Judgement to recover the $497,282.92 that he paid for the securities, with interest thereon, pursuant to the Maryland Securities Act § 11-703(b)(1)(i) & (d).

WHEREFORE, Plaintiff Kavon Nikbakhshian respectfully prays for a money Judgment against Defendants Hop Flyt, Inc., Robert Winston, Lucille Winston, and Kareem Kirdassi jointly

and severally, in the amount of $497,282.92, with interest thereon, plus the amount of his reasonable attorneys' fees and costs pursuant to the Maryland Securities Act § 11-703(b)(1)(i) and Section 7(i) of the Stock Purchase Agreement.

**COUNT 3**
**Securities Fraud In Violation of the U.S. Securities Exchange Act of 1934**
**(15 U.S.C. §§ 78a *et seq.*), including §§ 10(b) and 20(a)**
**Against All Defendants**

45. Mr. Nikbakhshian hereby re-alleges and incorporates by reference the allegations set forth in the above and below paragraphs as though fully set forth herein below.

46. Defendants offered to sell and did in fact sell securities to Mr. Nikbakhshian using means of interstate commerce, including telecommunication networks, email servers, the internet, and Bitcoin exchanges.

47. In connection with the offer and sale of securities to Mr. Nikbakhshian, the Company and Messrs. Winston and Kirdassi made materially false and misleading statements and omitted to state material facts necessary to make the statements made not misleading in light of the circumstances under which they were made. Mr. Kirdassi told Mr. Nikbakhshian that he (Mr. Kirdassi) and the Company were working with the Saudi Defense Ministry/Fund to obtain a $20 Million investment in the Company and various contracts. Mr. Kirdassi misrepresented to Mr. Nikbakhshian that his father, David Kirdassi, had already invested $1 Million in the Company. Mr. Winston omitted to state that David Kirdassi had not invested $1 Million in the Company, and said nothing to counter, correct, or modify Mr. Kirdassi's representation that David Kirdassi had invested $1 Million in the Company. The Company made the misrepresentations and omissions described above through Messrs. Winston and Kirdassi.

48. The misrepresentations and omissions described above were false. According to a Form D filed by the Company, David Kirdassi had invested only $200,000 in the Company.

49. The misrepresentations and omissions described above concerned material facts. A reasonable investor would have considered the omitted and misrepresented information important in deciding whether to purchase the Company's securities.

50. The Company and Messrs. Winston and Kirdassi knew, or were reckless in not knowing, that the statements described above, together with the omissions described above, were materially false and misleading. These Defendants acted with the intent to deceive Mr. Nikbakhshian and persuade Mr. Nikbakhshian to make an investment. They were motivated by financial gain to commit the fraud.

51. Mr. Nikbakhshian reasonably and foreseeably relied on Messrs. Winston's and Kirdassi's misrepresentations and omissions in deciding to purchase the securities.

52. Mr. and Mrs. Winston, who are both owners, directors, and officers of the Company, and who are married to each other, are each personally liable, jointly and severally, with and to the same extent as the Company to Mr. Nikbakhshian, pursuant to Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)). They each had the power to control the content and dissemination of statements made in connection with the Company soliciting investors and offering and selling its securities.

53. As a direct and proximate result of each of the Defendants' wrongful conduct, Mr. Nikbakhshian suffered damages in the amount of $497,282.92, plus interest, attorneys' fees and costs.

WHEREFORE, Plaintiff Kavon Nikbakhshian respectfully prays for a money Judgment against Defendants Hop Flyt, Inc., Robert Winston, Lucille Winston, and Kareem Kirdassi, jointly and severally, in the amount of $497,282.92, with interest thereon, plus the amount of his reasonable attorneys' fees and costs pursuant to Section 7(i) of the Stock Purchase Agreement.

**COUNT 4**
**Securities Fraud under the Maryland Securities Act**
**Md. Code, Corps & Assocs, §§ 11-101, *et. seq.*, including §§ 11-703(a)(1)(ii)**
**Against All Defendants**

54. Mr. Nikbakhshian hereby re-alleges and incorporates by reference the allegations set forth in the above and below paragraphs as though fully set forth herein below.

55. Defendants offered to sell and/or did in fact sell securities to Mr. Nikbakhshian from Maryland and the Stock Purchase Agreement provides that it shall be governed by the laws of the State of Maryland.

56. In connection with the offer and sale of securities to Mr. Nikbakhshian, the Company and Messrs. Winston and Kirdassi made materially false and misleading statements and omitted to state material facts necessary to make the statements made not misleading in light of the circumstances under which they were made. Mr. Kirdassi told Mr. Nikbakhshian that he (Mr. Kirdassi) and the Company were working with the Saudi Defense Ministry/Fund to obtain a $20 Million investment in the Company and various contracts. Mr. Kirdassi misrepresented to Mr. Nikbakhshian that his father, David Kirdassi, had already invested $1 Million in the Company. Mr. Winston omitted to state that David Kirdassi had not invested $1 Million in the Company, and said nothing to counter, correct, or modify Mr. Kirdassi's representation that David Kirdassi had invested $1 Million in the Company. The Company made the misrepresentations and omissions described above through Messrs. Winston and Kirdassi.

57. The misrepresentations and omissions described above were false. According to a Form D filed by the Company, David Kirdassi had invested only $200,000 in the Company.

58. The misrepresentations and omissions described above concerned material facts. A reasonable investor would have considered the omitted and misrepresented information important in deciding whether to purchase the Company's securities.

59. The Company and Messrs. Winston and Kirdassi knew that the statements described above, together with the omissions described above, were materially false and misleading. These Defendants acted with the intent to deceive Mr. Nikbakhshian and persuade Mr. Nikbakhshian to make an investment. They were motivated by financial gain to commit the fraud.

60. Mr. Nikbakhshian reasonably and foreseeably relied on Messrs. Winston's and Kirdassi's misrepresentations and omissions in deciding to purchase the securities.

61. Mr. and Mrs. Winston, who are both owners, directors, and officers of the Company, and who are married to each other, are each personally liable jointly and severally with and to the same extent as the Company to Mr. Nikbakhshian, pursuant to the Maryland Securities Act § 11-703(c). They each had the power to control the content and dissemination of statements made in connection with the Company soliciting investors and offering and selling its securities.

62. As a direct and proximate result of each of the Defendants' wrongful conduct, Mr. Nikbakhshian suffered damages in the amount of $497,282.92, plus interest, attorneys' fees and costs.

63. Mr. Nikbakhshian will tender the securities before entry of Judgement to recover the $497,282.92 that he paid for the securities, with interest thereon, pursuant to the Maryland Securities Act § 11-703(b)(1)(i) & (d).

WHEREFORE, Plaintiff Kavon Nikbakhshian respectfully prays for a money Judgment against Defendants Hop Flyt, Inc., Robert Winston, Lucille Winston, and Kareem Kirdassi jointly and severally, in the amount of $497,282.92, with interest thereon, plus the amount of his reasonable attorneys' fees and costs pursuant to the Maryland Securities Act § 11-703(b)(1)(i) and Section 7(i) of the Stock Purchase Agreement.

**COUNT 5**
**Common Law Fraud In The Inducement**
**Against Defendant Company, Mr. Winston, and Mr. Kirdassi**

64. Mr. Nikbakhshian hereby re-alleges and incorporates by reference the allegations set forth in the above and below paragraphs as though fully set forth herein below.

65. In connection with the offer and sale of securities to Mr. Nikbakhshian, the Company and Messrs. Winston and Kirdassi made materially false and misleading statements and omitted to state material facts necessary to make the statements made not misleading in light of the circumstances under which they were made. Mr. Kirdassi told Mr. Nikbakhshian that he (Mr. Kirdassi) and the Company were working with the Saudi Defense Ministry/Fund to obtain a $20 Million investment in the Company and various contracts. Mr. Kirdassi misrepresented to Mr. Nikbakhshian that his father, David Kirdassi, had already invested $1 Million in the Company. Mr. Winston omitted to state that David Kirdassi had not invested $1 Million in the Company, and said nothing to counter, correct, or modify Mr. Kirdassi's representation that David Kirdassi had invested $1 Million in the Company. The Company made the misrepresentations and omissions described above through Messrs. Winston and Kirdassi.

66. The misrepresentations and omissions described above were false. According to a Form D filed by the Company, David Kirdassi had invested only $200,000 in the Company.

67. The misrepresentations and omissions described above concerned material facts. A reasonable investor would have considered the omitted and misrepresented information important in deciding whether to purchase the Company's securities.

68. The Company and Messrs. Winston and Kirdassi knew, or were reckless in not knowing, that the statements described above, together with the omissions described above, were materially false and misleading.

69. These Defendants made the statements and omissions with the intent to deceive Mr. Nikbakhshian and to induce Mr. Nikbakhshian to make an investment and purchase the securities. They were motivated by financial gain to commit the fraud.

70. Mr. Nikbakhshian reasonably and foreseeably relied on Messrs. Winston's and Kirdassi's misrepresentations and omissions in deciding to purchase the securities.

71. As a direct and proximate result of each of the Defendants' wrongful conduct, Mr. Nikbakhshian suffered damages in the amount of $497,282.92, plus interest.

72. The fraud, which induced the Stock Purchase Agreement, renders the Stock Purchase Agreement voidable and justifies rescission and return of the $497,282.92 paid by Mr. Nikbakhshian for the securities, plus interest.

73. Mr. Nikbakhshian is entitled to punitive damages to include, but not be limited to, Mr. Nikbakhshian's reasonable attorneys' fees and costs incurred in connection with this lawsuit because Defendants intentionally and maliciously committed fraud.

WHEREFORE, Plaintiff Kavon Nikbakhshian respectfully prays for a money Judgment against Defendants Hop Flyt, Inc., Robert Winston, and Kareem Kirdassi, jointly and severally, in the amount of $497,282.92, with interest thereon, plus punitive damages, to include, but not be limited to, the amount of his reasonable attorneys' fees and costs.

Respectfully submitted,

SHULMAN, ROGERS, P.A.

By: *___/s/ Glenn C. Etelson________*

Glenn C. Etelson, Bar No. 06760
getelson@shulmanrogers.com
Shirley M. Steinbach, Bar No. 20038
ssteinbach@shulmanrogers.com
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
(301) 230-5200 (Telephone)

(301) 230-2891 (Facsimile)
*Attorneys for Plaintiff Kayvon Nikbakhshian*